UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
WILLIAM KRAUSE,                 )
                                )
        Plaintiff,              )
                                )
    v.                          )          Civil Action No. 11-10923-NMG
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security, )
                                )
        Defendant.              )
_____ )


REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM
DECISION BY COMMISSIONER OF THE SOCIAL SECUIRTY ADMINISTRATION

June 22, 2012

SOROKIN, C.M.J.

    The Plaintiff, William Krause ("Krause"), seeks reversal of the decision by the

Defendant, the Commissioner of the Social Security Administration ("the Commissioner"),

denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]

(Docket No. 11). The Commissioner seeks an Order affirming his decision. (Docket No. 13).

    For the reasons set forth below, I RECOMMEND that the Court deny Krause's Motion to

Reverse the Commissioner's Decision (Docket No. 11) and that the Court grant the

Commissioner's Motion for an Order Affirming the Commissioner's Decision. (Docket No. 13).

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB
or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims.
Therefore, citations in this opinion should be considered to refer to the appropriate parallel
provision as context dictates. The same applies to citations of statutes or regulations found in
quoted court decisions.

I.     BACKGROUND

Procedural History

Krause filed applications for DIB and SSI Benefits on September 9, 2008 and January 7,

2009, alleging that he had been disabled since August 15, 2002.  (Administrative Record

("A.R.") 141-47, 148-59).  His applications were initially denied on January 13, 2009.  (A.R. 73-

78).  Krause filed a Request for Reconsideration on April 24, 2009 (A.R. 79-80), which was

denied on August 27, 2009.  (A.R. 81-86).  On September 9, 2009, Krause filed a Request for a

Hearing before an Administrative Law Judge ("ALJ").  (A.R. 87-88).  Krause appeared and

testified at the hearing, held on November 8, 2010.  (A.R. 25, 29-52).  On December 13, 2010,

the ALJ rendered a decision unfavorable to Krause  (A.R. 4-16).

The ALJ's decision found that Krause had not been disabled from August 15, 2002,

through the date of the decision.  (A.R. 8).  Although the Decision Review Board selected

Krause's claim for review, the ALJ's decision was effectively affirmed because the Decision

Review Board did not act within the requisite ninety-day period.  (A.R. 1-3).  Having timely

pursued and exhausted his administrative remedies before the Commissioner, Krause filed a

Complaint in this Court on May 23, 2011, pursuant to 42 U.S.C. § 405(g).  (Docket No. 1).

Krause filed the Motion presently before the Court on January 9, 2012 (Docket No. 11), and the

Commissioner filed a timely Cross Motion.  (Docket No. 13).

Krause's Medical History

William Krause was born in 1971. (A.R. 14).  He earned his high school diploma and

completed three years of college.  (A.R. 14, 30).  He is single and has no children.  (A.R. 149).

His past work experiences consist of work as a sorter and loader/unloader.  (A.R. 54).

Krause listed "Manic Depressive Disorder" as the illness that limits his ability to work. (A.R. 182).

The issue in this case is whether the ALJ should have relied on Section I or Section III of the Mental Residual Functional Capacity Assessment for the hypothetical question he posed to the vocational expert.  (Document No. 12, at 9).

The Administrative Decision

In assessing Krause's request for disability benefits, the ALJ conducted the familiar five-step sequential evaluation process that determines whether an individual is disabled and thus entitled to benefits.  See 20 C.F.R. § 404.1520; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

First, the ALJ considers the claimant's work activity and determines whether he or she is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  The ALJ found that Krause had not engaged in substantial gainful activity since August 15, 2002.  (A.R. 9).

At the second step, the ALJ must ask whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ determined that Krause had the severe impairments of bipolar disorder, residuals of a left knee injury, and a history of drug and alcohol abuse.  (A.R. 10).

Third, the ALJ must determine whether the claimant has impairments that meet or are medically equivalent to the specific list of impairments listed in Appendix 1 of Subpart P of the Social Security Regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant has an impairment that meets or equals one of the impairments listed in Appendix 1, and meets the duration requirement, then the claimant is disabled.  Id.  From August 15, 2002 through December 13, 2010, the ALJ found that Krause did not have an impairment or combination of impairments

meeting or medically equivalent to an "Appendix 1 impairment." (A.R. 10). The ALJ specifically considered whether Krause's mental impairments satisfy the "Paragraph B" criteria by resulting in at least two of the following: (1) "[m]arked restriction of activities of daily living;" (2) "[m]arked difficulties in maintaining social functioning;" (3) "[m]arked difficulties in maintaining concentration, persistence, or pace;" or (4) "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. § 404P app. 1. The ALJ found that Krause has no more than mild limitations in daily activities and moderate limitations in social functioning and in concentration, persistence or pace. (A.R. 10-11). In determining that his social functioning is only moderately limited, the ALJ explained that he is able to maintain some social interaction when he complies with his medication regimen and abstains from drug and alcohol use. (A.R. 11). The ALJ also found that Krause has not experienced repeated episodes of decompensation. (A.R. 11). Absent "at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation," the ALJ concluded that Krause failed to satisfy Paragraph B and proceeded to step four. (A.R. 11-12).

At the fourth step, the ALJ considers the claimant's residual functional capacity and the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Whenever, as here, there is a determination that the claimant has a significant impairment, but not an "Appendix 1 impairment," the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis, despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). Here, the ALJ found that the claimant has the residual functional capacity to perform light work, except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and is able to push/pull with his lower extremities less than occasionally. (A.R. 12).

Moreover, the ALJ found that the claimant should avoid concentrated exposure to cold and hazards, such as dangerous machinery and unprotected heights, and should have minimal contact with the general public and with coworkers. (A.R. 12). The ALJ further found that Krause could no longer perform past relevant work, which the ALJ characterized as "heavy work." (A.R. 14).

At the fifth step, the ALJ asks whether the claimant's impairments prevent him from performing other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ found that jobs exist in significant numbers in the national economy that Krause can perform. (A.R. 14). Accordingly, the ALJ found that Krause was not disabled at any time from August 15, 2002 through December 13, 2010. (A.R. 15).

II.     STANDARD OF REVIEW

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Id. Likewise, where the Commissioner's finding is not supported by substantial evidence, or is the result of an error of law in the evaluation of the claim, the Court will not uphold the Commissioner's decision. Id. Substantial evidence supporting the Commissioner's decision exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Although the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st

Cir. 1991).  Indeed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (internal quotations omitted).

III.     DISCUSSION

Krause argues, only, that the ALJ's decision is not supported by substantial evidence because it relied upon vocational testimony that was based on an incomplete hypothetical. (Document No. 12, at 9).

At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> Please consider a hypothetical individual whose [age] ranges from 31 to 39 with a high school diploma and three years of college, the same work experience as Mr. Krause; exertional impairments . . . light exertional level; his ability to push and pull with the lower extremities is limited, and he has the following nonexertional impairments: He can only occasionally climb, balance, stoop, kneel, crouch or crawl; must avoid concentrated exposure to extreme cold and hazards such as dangerous machinery and unprotected heights; and should be in an occupation that involves minimal contact with the general public and with coworkers. The exertion would exclude – preclude the past work, but would there be any light or sedentary work available?

(A.R. 54-55).  The vocational expert responded affirmatively.  (A.R. 55).  The expert testified that, although Krause could no longer perform the work of a sorter or loader/unloader, there were jobs that existed in the national economy that he could perform.  (A.R. 55).  These jobs included work as a bench assembler, production inspector, and packer and sorter of small products.  (A.R. 55).  Based on this testimony, the ALJ rejected Krause's claim at Step 5.  (A.R. 14-15).

Krause claims error in the formulation of the hypothetical, specifically that the question did not include all of the categories for which the Social Security Administration's ("SSA") own expert determined Krause was "moderately limited" in the summary conclusions section of the

Mental Residual Functional Capacity Assessment. (Document No. 12, at 9-10). The expert found Krause moderately limited in the ability to maintain attention and concentration for extended periods; in the ability to work in coordination with or proximity to others without being distracted by them; in the ability to accept instructions and respond appropriately to criticism from supervisors; in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and in the ability to respond appropriately to changes in the work setting. (A.R. 407-08). As a result of the failure to include these limitations within the question posed to the vocational expert, Krause argues that the expert included within his answer jobs in the economy Krause is unable to perform. (Document No. 12, at 11).

For a number of reasons, I recommend that the Court reject Krause's argument. First, the ALJ's hypothetical tracks the residual functional capacity that the ALJ determined Krause possessed. (See A.R. 12). Thus, it accurately captured the limitations the ALJ determined afflict Krause.[2]

Second, the form actually completed by the medical expert contains a summary conclusions section (which contain the categories at issue marked as moderately limited) and a functional capacity assessment, in which the expert explains in a narrative her assessment of the claimant's capacity. (A.R. 407-09). That the summary section is merely an aid for the expert in forming his or her conclusions is explained clearly by the SSA's Program Operations Manual System ("POMS"):

> **NOTE:** The purpose of section I ("Summary Conclusion") on the SSA-4734-F-SUP is chiefly to have a worksheet to ensure that the physiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of

---

[2] Krause has not advanced the argument that the ALJ erred in his formulation of Krause's residual functional capacity by failing to include limitations from which Krause suffers, e.g. the moderate limitations noted above.

limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the physiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-473-F4-Sup **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

POMS DI 25020.010B1 (emphasis in original).   In addition, POMS states, "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**."  POMS DI 24510.060B2a (emphasis in original).  "**Section III** . . . is for recording the mental RFC determination.  It is in this section that the **actual mental RFC assessment is recorded**, explaining the conclusion indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."  POMS DI 24510.060B4a (emphasis in original).  Accordingly, the ALJ properly drew from the expert's narrative in forming the residual functional capacity determination.  The ALJ was not required to rely on check marked answers in Section I of the form.

Third, substantial case law rejects Krause's claim that the ALJ must include the summary conclusions as part of his residual functional capacity.  Relying on the instructions in POMS, the Third Circuit has concluded that plaintiffs "cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient."  Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 636-37 (3d. Cir. 2010).  Other courts have likewise instructed adjudicators that they may exclude Section I from their residual functional capacity analysis.  See, e.g., Kane v. Astrue, No. 10-1874, 2011 WL 3353866, at *3 (N.D.Ohio August 3, 2011) (explaining that "courts have consistently held that it is not error for

an ALJ to omit restrictions identified in Section I in his RFC analysis"); Schramm v. Astrue, No. 09-1197, 2011 WL 1297285, at *15 (E.D.Wis. March 31, 2011) (determining that the ALJ "acted properly and in accordance with SSA operating guidelines in looking to the narrative section of the [assessment form], rather than the worksheet"); Molloy v. Astrue, No. 08-4801, 2010 WL 421090, at *11 (D.N.J. Feb.1, 2010) (stressing that the ALJ "was not required to assign *any* weight to [Section I] of the report because it was not the final RFC finding") (emphasis in original).

IV.    CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court deny Krause's Motion to Reverse the Commissioner's Decision (Docket No. 11) and grant the Commissioner's Motion for Order Affirming the Commissioner's Decision (Docket No. 13). [3]

/s/ Leo T. Sorokin
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[3] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 474-75 (1985).